ADOLPHUS C. WHITCOMB, Appellant, v. MARY H. HENSLEY et al., Respondents.

No. 1737; April 12, 1869.

**Ejectment—Map as Evidence.—In an Action of Ejectment** where the controversy rests on the plaintiff being able to locate premises described in his muniments of title, such location must be proved by better evidence than a map purporting on its face to be a copy, not in any way authenticated, and not shown ever to have been adopted by competent authority as a map of the city in which the premises are alleged to lie.

APPEAL from Third Judicial District, Santa Clara County.

Wm. Matthews for appellant; S. O. Houghton for respondents.

SPRAGUE, J.—Are the lands described in appellant's muniments of title, as by him offered and read in evidence on the trial, the same lands described in his complaint? seems to have been the ultimate question of fact submitted to the court below and presented on this appeal; or, in other words (there having been no evidence offered in behalf of defendant), does the evidence presented by appellant establish his title to the lands described in his complaint, or any portion thereof?

The complaint minutely describes the demanded premises by metes and bounds, locating the same as in block No. 4 of White's survey and addition to the city of San Jose, as laid down on the map of said city, and gives the abuttals of said block No. 4 as Taylor street on the north, Second street on the east, Jackson street on the south, and First street on the west, and further describes the same lands as comprising all of lots numbered 37, 38, 39, 40, 44, 45, 46, 47 and 48 in said block 4 of said White's addition to said city of San Jose, as the same are marked down on the present map of the said city of San Jose.

On the trial, as evidence of his title to the demanded premises appellant introduced and read a grant made by K. H. Dimmick, as alcalde of the Pueblo de San Jose, to Chester S.

Lyman, dated March 10, 1849, of lands described therein as follows: "All that certain piece or parcel of land lying and being in the Pueblo de San Jose in the north section of said city and known as lots No. 44, 45, 46, 47 and 48, being the east half of Block 4 of White's Survey, executed by C. S. Lyman, Esq. and now on file at the alcalde's office."

Also a grant made by K. H. Dimmick, as alcalde of the Pueblo de San Jose, to Charles White, dated March 10, 1849, of lands described therein as follows: "All that certain tract or piece of land lying and being in the Pueblo of San Jose and known as White's Survey executed by C. S. Lyman, Esq., all of Blocks one, two, three and the west half of Block four lying north of and adjoining the original town survey, bounded on the north by Washington Street and east by the east half of Block four, be the same more or less."

Also a deed of conveyance from Chester Smith Lyman to Hiram Grimes, dated May 26, 1849, of lands described as follows: "All that certain piece or parcel of land lying and being in the Pueblo de San Jose de Guadalope in the north section of said city and known as lots numbered 37, 38, 39, 40, 43, 44, 45, 46, 47, 48 in Block Number 4 of White's Survey, executed by C. S. Lyman and now on file in the Alcalde's office in said Pueblo."

Also a deed of conveyance from Charles White and wife to Hiram Grimes, dated June 6, 1849, of lands described as follows: "All that certain piece or parcel of land lying and being in the Pueblo de San Jose in the north section of said city and known on the plat of White's Survey executed by C. S. Lyman, Esq., surveyor, as lots number 37, 38, 39 and 40 in Block No. 4, each lot being fifty varas by about one hundred and fifteen deep."

Also a deed of conveyance from Hiram Grimes to appellant, dated January 31, 1863, of lands described as follows: "All that certain piece or parcel of land lying and being in the Pueblo de San Jose, Santa Clara County and State of California, in the north section of said city and known as lots number 44, 45, 46, 47, 48 and being the east half of Block 4 of White's Survey executed by C. S. Lyman and conveyed by K. H. Dimmick 1st Alcalde to Chester S. Lyman dated March 10, 1849 . . . . also all that piece or parcel of land lying and being in the Pueblo de San Jose in the north sec-

tion of said city and known on the plat of White's survey
executed by C. S. Lyman, Surveyor, as lots number 37, 38, 39
and 40 in Block No. 4 each lot being fifty varas by about one
hundred and fifteen deep-being the four lots conveyed by
Charles White and Ellen E. his wife to Hiram Grimes June
6, 1849.''

No question was made upon the validity of these grants
and deeds, or as to the effect of the same being to vest the
legal title in appellant to the lands described in his deed from
Hiram Grimes, dated January 31, 1863; and plaintiff, on the
trial, after having called as witnesses the city clerk of the city
of San Jose and the county recorder of the county of Santa
Clara, the former of whom testified that he ''had in his cus-
tody and possession, as such city clerk, all the maps, papers
and records belonging to or in the possession of the city of San
Jose, as the successor of the former pueblo of San Jose, and
that there was no such map or survey as White's survey exe-
cuted by C. S. Lyman in his custody as city clerk, and that
there was in his custody no map or survey of White's survey
or addition to San Jose of any description except such as ap-
peared upon the map of the city of San Jose,'' hereinafter
set forth.

The witness then produced a map purporting, upon its
face, to be a plat of the city of San Jose with the various
additions, made in the year 1850 by Thomas White, as city
surveyor of said city, which said map was in the custody of
the city authorities at the time witness entered upon the
duties of his office, and that it was the map generally used
by the inhabitants of the said city in making conveyances of
lands in said city, and the map used by him, in his official ca-
pacity, as the map of said city. That there was, also, in his
office another map purporting to be a map of the city of San
Jose, that it was a lithographed map and was known as the
Sherman Day map, which was produced by the witness.

The latter witness testified that there was but one map of
the city of San Jose in his office; that that map was the one
used by him, that he did not know how it came in his office,
that it had no indorsement of any filing upon it. He then
produced the map referred to by him, which on comparison
appeared to be a lithograph copy of the Sherman Day map,
and a duplicate of the map produced by the city clerk.

Both these maps were offered in evidence by plaintiff and objected to by defendant.

The Thomas White map was admitted and the Sherman Day map rejected, on the ground that it purported on its face to be a copy—was not in any manner authenticated, and had not been proved to have ever been adopted by competent authority as the map of the city.

The exact location of White's survey and block No. 4 thereon is the important preliminary fact in arriving at the ultimate facts as to the identity of the lands described in plaintiff's deed from Grimes with the lands described in his complaint.

The Thomas White map in evidence purports to be a "map of the city of San Jose surveyed and drawn by order of the common council in the year 1850 by Thomas White, city surveyor," and with its explanatory notes delineates and gives the relative locations and abuttals of the original survey of the pueblo, White's addition, the city addition, Read's addition, Cook & Branham's addition, Nagle and Sansevain's and Ruckle's additions. This map, having been made in 1850, clearly is not the map or survey referred to in the original grants of plaintiff's lands, made March 10, 1849.

From an examination of this Thomas White map and explanatory notes, White's addition, as thereon delineated, extends from Julian street on the south to Taylor street on the north, and from Ninth street on the east to the western limits of the city. The explanatory notes state that "White's addition extends from Julian Street northerly to Taylor Street"; and, although the eastern and western boundaries are not given in the explanatory notes, the same notes do locate Cook & Branham's addition from Ninth street east to red line below Sixteenth street in a position to preclude the extension of White's addition easterly beyond Ninth street, and the map does not disclose any addition or survey between White's addition and Cook & Branham's.

After the introduction of this map plaintiff called a witness, Thomas Bodley, who testified in substance that he had been a resident of San Jose since 1849, had been a practicing attorney in said city since 1850, and during that period had been extensively engaged as a conveyancer of lands in said city, and dealing in real estate therein. That there was but

one tract of land within the limits of the city of San Jose called White's survey or called White's addition, and that he knew the boundaries thereof as universally received, accepted and known among the inhabitants of said city; and then gave the boundaries of White's survey or addition, as so fixed by common understanding and report, and pointed the same out on the Thomas White map, making the northern boundary thereof Taylor street, the eastern boundary Seventh street, the southern boundary Julian street, and the western boundary First street to its junction with Market street, and from said junction to Julian street the western boundary was Market street. Witness then pointed out the lands described in plaintiff's complaint, and located the same in block 4 as laid down on the Thomas White map as the northwest corner block of White's addition, bounded by Taylor street on the north, Second street on the east, Jackson street on the south and First street on the west. Witness never had seen the original White's survey executed by Lyman, but had seen what purported to be copies of it, but had no means of knowing whether the copies were true; that his information and knowledge of the boundaries of White's survey and addition, and also the lands sued for were derived from general notoriety and reputation.

This is the substance of the entire testimony on the trial, from which it will be observed that upon the important preliminary question, as to the exact boundaries of White's survey or addition, the evidence afforded by the Thomas White map and that given by witness Thomas Bodley materially conflicts, as by the map with the explanatory notes the eastern boundary of White's addition is manifestly Ninth street, whereas the evidence of Bodley establishes the eastern boundary of White's addition by common report of the inhabitants of the city as Seventh street.

All the testimony, however, concurs in establishing the southern boundary of White's addition as Julian street and the northern boundary as Taylor street, and in locating Washington street as the next street north and parallel with Julian street, Empire street as the next street north of Washington street, Jackson street as the next north of Empire street, and the next south of Taylor street.

Appellant insists that the true location and boundaries of White's survey or addition are as stated by witness Bodley, and that the eastern boundary thereof is Seventh street, while respondent claims that the true eastern boundary is Ninth street, as evidenced by the Thomas White map. As delineated by this map, taking Seventh street as the eastern boundary of White's addition, there is but one block numbered 4 in the addition, but there are two blocks numbered 1. The block numbered 4 being the northwest corner block between Taylor and Jackson, First and Second streets, as described in plaintiff's complaint; but taking Ninth street as the eastern boundary of said addition, there are in said addition two blocks numbered 4 and two blocks numbered 1, the two blocks numbered 4 being northwest and southeast corner blocks of the addition, the southeast corner block numbered 4 being bounded on the north by Washington street, on the south by Julian street, on the east by Ninth street and on the west by Seventh street. Regarding then the location and relative position of Julian, Washington, Empire, Jackson and Taylor streets established and conceded as above stated, the grant from K. H. Dimmick to Charles White of March 10, 1849, offered in evidence by plaintiff as the foundation of his title to lots numbered 37, 38, 39 and 40 in the west half of block 4 of White's addition or survey, furnished potent evidence tending to establish the eastern boundary of White's survey or addition at Ninth street, as delineated on the Thomas White map, and conclusive evidence that the west half of block 4 in which these lots Nos. 37, 38, 39 and 40 are located, is between Julian and Washington streets, and that this block 4 is in the extreme southern tier of the blocks of White's survey, instead of the extreme northern tier, as claimed by plaintiff. The grant in plain terms defines the granted lands as adjoining the original town survey and south of Washington street, and it being conceded that Julian street is the northern boundary of the original survey or pueblo and the southern boundary of the White survey or addition, and that Washington street is the next street north of and parallel to Julian street, it follows necessarily from the terms of the grant to Charles White that all the lands conveyed by the same, including the block 4 conveyed therein, are located between Julian and Washington

streets, and are bounded on the north by Washington and on the south by Julian streets; and as in the entire range of blocks between Julian and Washington streets from the extreme western to the extreme eastern limits of the city, as delineated and marked on the map in evidence, there is found but one block numbered 4, and this block 4 is bounded north by Washington street, east by Ninth street, south by Julian street and west by Seventh street, it is manifest from the evidence disclosed by the record that the block 4 named in the grant to Charles White is bounded on the east by Ninth street; and that block being in the White survey referred to in the grant establishes the eastern boundary of White's survey or addition as far east, at least, as Ninth street. The block 4 named in the grant to Charles White being thus definitely located, by the terms of the grant, south of Washington street, and the west half of the block containing lots 37, 38, 39 and 40, to which plaintiff has shown he holds title through Charles White, the original grantee, and having by his complaint located lots 44, 45, 46, 47 and 48, the title to which he derives through C. S. Lyman, as adjoining to the aforesaid lots 37, 38, 39 and 40 and in the east half of the same block 4, and there being no evidence tending to show that block 4 named in the White grant and the block 4 in the Lyman grant are different or distinct blocks of the White survey, we are entirely satisfied that the lands to which plaintiff's evidence established his title, and every part thereof, are many blocks southeast of the lands described in his complaint, and that the evidence entirely fails to establish title in plaintiff to the demanded premises or any portion thereof. The findings of the court below, therefore, are fully sustained by the evidence. The error assigned upon the exclusion of the Sherman Day map is not tenable. As independent evidence it was clearly incompetent for want of proper authentication.

The fourth assignment of error seems to have no foundation upon which to rest. It does not appear from the record that the court excluded from consideration the evidence furnished by the Thomas White map of the city of San Jose, the only map admitted in evidence on the trial. On the contrary, the court seems to have fully considered such evidence, as it tends most strongly to sustain the findings.

Judgment and order affirmed, and remittitur directed to issue forthwith.

We concur: Rhodes, J.; Sanderson, J.; Crockett, J.; Sawyer, C. J.